Stuart and Mr. Beaton Good morning, your honors, and may it please the court. My name is Benjamin Beaton. I'm here on behalf of my client, Mr. Stuart. I'm also presenting argument on behalf of co-defendant, Ms. Sterling, in this case. This morning I'd like to address three issues to the court. First, the identity theft issue, which comes in two pieces in terms of admissibility and its effect on the conviction, and also its effect on Mr. Stuart's sentence. And then I'd like to address the deliberate ignorance of instruction that led to Ms. Sterling's conviction. Now as to the identity theft issue, our position, I believe, is quite simple. The an identity theft allegation about something that happened in 2012 and 2013 involving one person and one victim is quite distinct from a lottery scam that occurred in 2010, 2011, involving many defendants, co-conspirators, and many victims with repeated contact. The clearest way to... Which one are you, which defendant are you representing? Well, I'm here offering argument on behalf of both defendants. My client is, along with the federal public defender, is Mr. Stuart. Okay, that's fine. And this, the identity theft issue, of course, relates only to Mr. Stuart's conviction and sentence, not to Ms. Sterling. The clearest way for the court to see the distinction between the identity theft issue that should not have come into evidence, that should not have come into the case, and the lottery scheme that was the basis for this prosecution is simply to look at the very opening of the government's argument trial, the opening statement, which defines the lottery scheme that it set out to prove. It doesn't mention anything about identity theft with respect to any conspirator until the tail end when it mentions... You'll also hear evidence that Mr. Stuart was involved in an identity theft scheme. You can also look to pages five and six of the red brief in this case, where the government very epithelially sets out, here's what a Jamaican lottery scheme is all about and here's how it went down in this conspiracy with many victims and many defendants. The extremely prejudicial identity theft issue that we objected to below and that affected the conviction and the sentence involved action 18 months later by a single defendant, Mr. Stuart. There's no allegation that he had any communication with any other co-conspirator, that any other conspirator was actively involved. The prejudice is so great because this is the one instance in which Mr. Stuart was seen directly defrauding a victim in the case. In the lottery scheme, it's undisputed that his role was as a mule. He pled guilty to that. He received money and passed it on. There's no question about his role there. That is not at all similar to the role he played, was alleged to have played in this uncharged but offered identity theft evidence from 2012 and 2013 when he's sitting at a computer by himself more than a year later opening a debit card account under the auspices of one of the victims from the lottery scheme. The government's position is that while this is part and parcel of the charged conspiracy, this was intrinsically intertwined, necessary to complete the story. But given the many distinctions between the identity theft allegation and the crime that was actually charged and proved beyond a reasonable doubt, this Jamaican lottery scheme, I don't think there's any support that I can see in the red brief that shows you an example whereby something this distinct has ever been swept in as intrinsic conduct to a conspiracy, a conspiracy to fraud certainly, but anything resembling that either. To really illustrate the incongruence of treating this as part and parcel of the lottery scheme, I think it's best to view it from the perspective of, for instance, the other co-defendant here, Miss Sterling, who was also charged and convicted with operating as a money mule. The notion that she would ever be held to account by virtue of her co-conspirator's action for going off more than a year later, opening up a debit card in someone else's name and defrauding a seems completely incongruous. The government certainly didn't try to hold anyone else to account for this. I think that's because from the outset of this case, when the identity theft issue was charged separately and later dismissed, everyone understood it to be distinct conduct, not part and parcel. Why doesn't it come in under 404B? Well, it would have to come in under 404B if it comes in at all. That's certainly not the position, other than as a fallback. The reason it shouldn't have come in under 404B, though it did, is through the plain application of the Queen decision that sets forth the four-part test with 404B and this circuit. And the most important factor... 404B is pretty loose in this circuit. It's pretty much, we're the judges, we let it in. The predicate for getting in 404B evidence, which the Queen makes quite clear, is that you want to first see some sort of similarity, some relationship between what the defendants did and the other acts and what he was charged and what he's being charged for. That's how you distinguish, as this court's saying, Queen, from general bad character evidence and the specific... This is certainly an abuse of discretion standard. That's undisputed. Can you try to distinguish between the extrinsic, intrinsic? And that term has been used too, right, for the 404B stuff, whether it's part and parcel or extrinsic and intrinsic and those terms are out. Certainly. A question of admissibility is going to be subject to the same standard of review. The reason why Queen and other decisions treat 404B specifically, this is not just a question of relevance under 401, it's also more than a 403 analysis, is because of that risk that the court has recognized repeatedly that bad character evidence will convict someone. And I'd like to... Did you get a cautionary instruction here? There was an instruction here, as there generally is in a 404B situation, that of course doesn't... But wouldn't Stuart's knowledge of Bennett's identity serve to tie him closer to this conspiracy? It would serve to tie him closer to the conspiracy, but in a very prejudicial way. I'd like to contrast this situation with normal 404B other act evidence. It's proved up, it's offered for intent and knowledge normally, but normally have prior acts that are similar and the government is able to get those in to say, you know, when he was standing on the corner with that drug paraphernalia, he probably wasn't innocently there. This wasn't all an accident. And that makes sense because we infer from past conduct what the knowledge was at that point. Here, you flip that. You've got earlier charged conduct. And 18 months later, you have a different alleged crime. The only overlap is the involvement of this one... You say it's not intrinsic and you say it's not probative of knowledge and everything. I mean, this seems to be relevant evidence and you're just determined to keep it out. If this were purely a question of relevance, Your Honor, the question for the district judge and for this court would be far different. But under 404B, it's of course not just a question of relevance. Relevant to knowledge. That is what the government has to rely on, is that this is relevant to knowledge. And that is not... And that they must also overcome a 403 analysis. Let me ask you this. Apart from that, isn't there a great deal of evidence tying Mr. Stewart to the conspiracy? There's a great deal. Certainly his role as a money mule was admitted. He pled guilty to participation in a money laundering conspiracy. His trial was about whether he was also guilty of conspiracy to defraud these victims. And on that point, there's actually quite limited evidence. Certainly there's evidence that he was involved with the money laundering as he admitted. The further question is, had he agreed to defraud these victims? And there's no instance in which the evidence shows him interacting with one of the victims directly other than this identity theft allegation. If I may, Your Honor, I would just like to note that before moving on to the issue with Ms. Sterling, that the identity theft evidence played a significant and serious role in sentencing as well. We've objected to three enhancements. And if you look at the government's brief, you'll see that their response to each of those three relies on the importance of the identity theft issue being treated as part and parcel of the conspiracy. So on the sentencing, the final sentence for Mr. Stewart was 60 months? That's correct. And even if the enhancements were proven to be erroneous, if you knocked down each of those two level enhancements, it would leave a guideline range of 70 to 87 months? That's correct. And you got a sentence which was at least measurably below the guidelines range that even if all of your arguments were accepted? That is true. The sentence would still be below. But of course, you're talking about a 10-month departure rather than more than six years departure that would have applied with the original district court. Say, look, given everything, irrespective of the enhancements, I find this would be the appropriate sentence. I guess the overall question I'm having here is, given the amount of evidence tying Mr. Stewart to the conspiracy, and given the fact that the district judge said, I think this is an appropriate sentence in light of the 3553A factors, is there a practical point in sending this back for a whole new trial when you've got all the large quantum of evidence showing Mr. Stewart's connection to the conspiracy where the district court says, this is a sentence I want to give? I mean, I just kept asking myself throughout reading about this case, if we sent it back, is there any chance that anything's going to turn out differently? How long was the trial here? How long did it go on? I don't know the number of days off my head, but I will answer that during my rebuttal. Can you give me an estimate? It was not a tremendously long trial. Five days is what I understand. Were you involved in the trial? I was not, Your Honor. I was brought on pro bono for this. You're the appeals expert. Well, I won't use the word expert. I'm an appellate lawyer. I'll use expert. Thank you, Your Honor. For lawyers and a district judge and the jurors and witnesses that spent time at the trial, five days since the trial is no small thing. Now, if there was an error here that was in some way going to be really prejudicial, or if there was a chance that things were going to turn out differently, but both on the sentencing question and on the evidentiary ruling, I just wondered, just practically speaking, given the evidence and given the district judge's inclination to impose that 60-month sentence, is it going to make any difference? Is it going to matter? I'd make a couple points in response to that, Judge. When the district judge made his comment about, either way, you're getting the same sentence, that was specifically in the context of deciding on a loss amount, which represented only a two-level enhancement. I think we have to consider that in context. I thought the vulnerable victim enhancement was a two-level enhancement, too. All the enhancements that are objected to on appeal were two levels. The multiple victim enhancement is not one that we've raised. The vulnerable victim. Yes, Your Honor. Vulnerable victim, means of identification, the loss amount, all are two-level enhancements, which would add up to six. But the judge's comment was in reference to, one, two-level sentence. And that's, of course, coming against the backdrop of this Court's precedent in Montes Flores, that you want to see certainty before you will reach a harmless decision. Because, of course, a resentencing is much less burdensome than a new trial, for instance. How much more certainty do you get when he says 60 months is an appropriate sentence? And he's going below. Well, certainly. He's going not just below, but significantly below the revised guidelines, if all of the errors he made were erroneous. I don't see how all the errors he made could possibly be erroneous. I mean, weren't these vulnerable victims simply by virtue of their advanced age? How old were these people that were being the victims of this identity theft? They were elderly, and that's undisputed. I mean, that's not sort of, you know, treated euphemistically by saying they were elderly. How old were they? In their 70s and 80s. They were very old. Some have, not to make light of it, Your Honor, some have passed away since trial. Some have passed away, and you're saying that this is an erroneous enhancement? No, Your Honor. The point is, it goes to specific intent to target a victim because of his or her age. The evidence with respect to Mr. Stewart's knowledge at the time that these were old, however we want to describe it, was actually extremely thin. Well, that's a question that's under a preponderance standard at sentencing. That's true. We all know these identity theft schemes are targeted particularly at seniors and older people because they make easier prey. And they're more gullible, and they feel vulnerable, and they're more defenseless. And many of them are, they don't, they're not always sophisticated people. A lot of them are retired. Some of them are living alone. And here, they are targeted because their age makes them uniquely susceptible to these kinds of scams. And a district judge can take that into account. That's one of the things he didn't like. Absolutely. And you don't hear me arguing that as a factual matter, these victims do not somehow qualify for that. The objection is simply that the evidence the district court used to make this connection to Mr. Stewart was chiefly, if you look at the red brief, the same identity theft evidence that should have been out of the case to begin with. The lottery scheme that's targeted the elderly victims was not an identity theft scheme here. That's the critical distinction. And our sentencing... Let's do this on rebuttal now, okay? Unless my colleagues have some questions. Bob, Jim. All right. Let's hear from the other side here. Let's hear from Mr. McGraw. Good morning, Your Honors. And may it please the court, Dan McGraw on behalf of the United States. This court should affirm the convictions of both Delmena Sterling and Fabian Stewart for their knowing participation in the Jamaican lottery scheme that targeted elderly victims in the Eastern District of Virginia and throughout the United States. The district court's rulings in this case were not an abuse of discretion, but rather they were carefully reasoned on the record and entitled to deference. Did you try to... I did not, Your Honor. I wrote the appellate brief in this matter and I'm here for argument. First, I would like to address the identity theft issue. Evidence of Mr. Stewart's identity theft of victim three, Mr. Bennett, was properly admitted by the district court under Rule 404B as relevant and necessary evidence of his knowledge and intent regarding the lottery scam conspiracy. You say it's intrinsic?  In our brief, we argue... Part and parcel, right? Correct. That's what you say. Correct. We argue in the alternative... So you don't even have to go to 404B. Well, just as we did at the district court level during trial, we believe that the identity theft crimes, the evidence of that was intrinsic to the lottery scam conspiracy. Indeed, no notice... But if we were not to agree with you on that, your alternative argument would be under 404B in knowledge, would it not? That's correct, Your Honor, and I do believe that's actually how Judge Ellis admitted this evidence. There was a bit of unclarity during the motion in Lemonet pre-trial hearing when he first said, this isn't 404B evidence, but I'm going to provide a limiting instruction so that the jury only takes it for knowledge and intent. So at the end of the day, while we argue in the alternative here on appeal, and as we did during trial, at the end of the day, the evidence was admitted under Rule 404B, and the jury, at the time the testimony was given, received that limiting instruction. The 404B evidence was, in fact, necessary, just as Your Honor said, to prove Mr. Stewart's knowledge of the underlying lottery scam conspiracy and his intent to participate in it. I want to be clear that necessary under the precedent of this court only means that it's probative of an essential claim or element of the offense. This is not do-or-die evidence, but in fact, the identity theft of victim three was necessary to show Mr. Stewart knew of the lottery scam conspiracy. There was a great deal of evidence tying Mr. Stewart to the conspiracy. There was, Your Honor, and at the end of the day, even if this court finds that Judge Ellis's rulings were all erroneous, we believe it would be harmless error based... You don't argue harmless error in the brief, do you? And Your Honor, I do have to admit that was an oversight by the government. We did not put that in our brief. Well, why don't you say you didn't need to argue harmless error? It's not harmless. It's a thought error, you know. Well, that's certainly our first argument, Your Honor, is that none of these rulings were erroneous. You say it's intrinsic. You don't even need to go to 404B, but it qualifies under 404B. Absolutely. But if it doesn't, it's harmless. Absolutely. Those are three levels. That's correct. Anyway, we look at it, you think... Well, I can... No. But we admit 404B is an inclusionary rule anyway. It is. And really, the primary consideration for the district court is whether it's probative, whether it's relevant. And if it goes to something other than proving the bad character... We'll allow it in unless it tends to prove only a criminal disposition. That's correct, Your Honor. It's relevant, necessary, and reliable. And the judge can let it in. And I would note that the appellant... That might be a little bit too loose, but that's the law in the Fourth Circuit. That's correct. And I would note that the appellant in their briefing does not argue that it was irrelevant. Of course, it's relevant. And that's almost the gateway. That's the gatekeeper for 404B. But I mean, the main thing is relevant to proven intent or motive or something. Absolutely. In this case, knowledge and intent. And then once we have... That helps the jury. Once we pass that hurdle, Your Honor, then we look at 403. And the probative nature of this evidence greatly outweighed any prejudice to Mr. Stewart in light of the evidence that had already been admitted against him at trial. Can we consider harmlessness if you haven't raised it in your briefs? Can you raise it now? Your Honor, I would respectfully... Respectfully, I would ask that the court does consider it. We don't waive that as an argument. And I would note that the appellant... You waive it by not briefing. Normally, you waive things like that if you don't brief them, I think. You waive things by not briefing. Now, whether the government waives harmlessness, there's a rule in it, too. Maybe you never can waive one. Respectfully, I don't think the court needs to get to harmlessness. And I would note that the appellants have conceded that harmlessness review applies both in their opening brief and their reply brief. Again, it was an oversight that was admitted from our brief. Well, this is something... You know, because a lot of these cases have a great deal of evidence independently of any alleged evidentiary error. And I don't understand why... Because, you know, it's a rare case that would actually turn on a 404-B rule. I mean, oftentimes, that's sort of supplementary or cumulative or whatever. There's a lot else. But I don't understand why you don't raise that harmlessness point just as a matter of course, if you have that kind of... If you have a good case. Now, if you have a lousy case, that's something else. But if you have a good case, just do it, no matter how airtight you think the ruling on the merits is. Just do it. I understand, Your Honor. And again, it was an oversight. I think you'll probably do it next time. I would believe so. Let me ask you this question to draw to something that Philip points out in the brief. And that is, they seem to make quite a bit of the fact that students' alleged identity have occurred later than many of the overt acts that were associated with the conspiracy. Does that make a difference? At least, typically, you deal with 4.4.B. You're dealing with evidence of prior acts that occurred before the overt acts. And you kind of said, well, it's true that he knew or that he had intent. But to establish that, bring in 4.4.B evidence that occurred after the act for the purpose of showing that he had knowledge of it, does that make a difference? No, Your Honor. 4.4.B applies to other crime, other bad act evidence, whether it was prior to the charged conduct or a conduct that occurred after. And in this case, the ID theft evidence was necessary to prove Mr. Stewart's knowledge of the lottery scam conspiracy. Indeed, that was his central defense at trial. I know that I was receiving this money. I know that it had a criminal basis. But I had no idea what the rest of my family members were doing. So by admitting the evidence of the identity theft, the government was able to prove Mr. Stewart not only was in possession of one of the victim's personal identifying information that he otherwise had no contact with, as the evidence showed at trial, and was able to open a credit card or at least two debit cards in that victim's name. So with regards to your question, yes, it applies both to prior bad act and to future act evidence. And in this case, it was necessary for the reasons that I outlined. And again, I would state that at the end of this, this argument is the 403 balancing that overwhelmingly shows that this evidence was much more probative than it was prejudicial to Mr. Stewart, who the evidence at trial showed had received over 16 packages from unknown individuals that contained thousands of dollars of cash wrapped in magazine, taped in pages of magazines that were bundled inside these packages. He also instructed his ex-girlfriend to receive packages on his behalf and to send money, wire money to Jamaica. So the evidence against Mr. Stewart was great. And under that 403 balancing inquiry, it outweighs any prejudice to Mr. Stewart. I would move in to the sentencing argument that the appellants raised. And again, Your Honor was exactly correct. At the sentencing stage, the standard is a preponderance of evidence. So whether we're talking about the identity theft crime or whether we're talking about the vulnerability of the victims, Judge Ellis knew the correct standard during sentencing. And he took that into account. He presided over the four or five-day trial and was entitled. It certainly wasn't an abuse of discretion for him to rule the way that he did. Which to abuse of discretion, what, with respect to the enhancements? Those are questions of fact-finding. Right, which would then, that would be a clear error standard. Yeah, that's not an abuse of discretion. The abuse of discretion standard applies to the sentence he gets. Correct. The 60-month sentence. The abuse of discretion standard doesn't apply to an enhancement. Correct. It's a clearly erroneous question. Correct, Your Honor. For any factual finding, it is clear error. And I would note, based on your discussion with appellant counsel, Mr. Stewart received 60 months on each of the counts that he was convicted of at trial. He also received 60 months on the money laundering conspiracy charge that he pled guilty to. Was that concurrent or consistent? It was all concurrent. So if you want to talk about what's the practical nature of this case and whether you send it back. So everything was concurrent and there were, you're saying that one of the things that bolsters the fact that he was going to give a 60-month sentence regardless was the fact that there were all these concurrent offenses. Absolutely. I mean, all of these different offenses. Well, and all you need to do is look at this. All these concurrent sentences would reinforce the fact that, look, we're going to do 60 months. I agree with Your Honor. And all you have to do is read Judge Ellis's ruling after he imposed the sentence. I believe he said, it doesn't affect my judgment. And appellant counsel is correct. He was speaking specifically about the loss amount enhancement at that point. If it were 12, 12 levels, I still would have imposed 60 months. Indeed, I would do that with respect to most of the objections that you raise. I think 60 months is an appropriate sentence in this case. I point out, Mr. Stewart, that it's far less than what the guidelines call for in this case. And as Your Honor noted, even if all the enhancements or all the guideline issues are range, 60 months is considerably below that. Well, at the end of the day, the question I ask myself with respect to this case is, I just, given Judge Ellis's view on sentencing and what he was going to give this person, and given the amount of evidence against Mr. Stewart with tying him to the conspiracy, it just doesn't serve any purpose to send this thing back. It isn't going to be any, nothing's going to be any different. The government agrees, Your Honor. How long before the trial did he plead guilty? That's a great question. He pleaded guilty count two, before the trial. That's correct. That was the money laundering conspiracy count. Your Honor, I don't want to, I'm not exactly sure. But it was in close proximity. But you had a plea agreement with him. He agreed to a statement. There was no plea agreement. I thought he signed a statement of facts to support the plea. He signed a statement of facts that, uh, Well, that's part of it. I'm not, you hadn't, wasn't that an agreed statement of facts? I don't believe government counsel signed off on that. You don't think it was an agree, you don't think it was any agreement then? Well, during, during the plea hearing, which there's an extensive record on, with Judge Ellis questioning Mr. Stewart and his counsel, they offered the statement of facts. And I believe that government counsel concurred. But if it were up to them, There was an agreement. There was an agreement in the connection with the count two. That's what, I mean, if they agreed to the statement of facts. But I couldn't understand, if he pleads guilty and he's got 60 months, then why did the government go through the trial and disappeal him? And I, unfortunately, was not trial counsel. And I can't answer that question. But you're the only one we got here. Yeah, well, I, I'm not sure, Your Honor. I would note, You're the governor. I would note, You're the governor. I would note that, that all of the co-conspirators who pled guilty, uh, pled guilty to the money laundering. Pled guilty, he's got 60 months. And there's an agreed statement of facts where he admits he's guilty. Used fake U.S. government IDs and all kinds of stuff. And then they go to trial anyway. Well, I believe that, that speaks to Mr., Mr. Stewart's, uh, culpability in this case. Remember what I told you, all these big heavy briefs. Take an hour and a half this morning to argue the thing. I believe that speaks to Mr. Stewart's culpability. I mean, we can look, you know, review the evidence against him at trial. He was, uh, one of the main, main players, not the two ringleaders in Jamaica, but he was definitely, uh, the main player here in the United States. All right. Is there anything further, sir? Uh, unless the court has questions regarding the deliberate ignorance instruction, I'm happy to address that. That's in your brief. It is. I want to ask my colleagues if they have further questions. I'm fine. We don't have any further questions. Thank you very much, Your Honor. Mr. Beaton, come on up. Thank you, Your Honor. Um, I do want to make sure I address Ms. Sterling's deliberate ignorance instruction, but I would like to note the concession, um, that I hear from the government, both on, in, in the intrinsic point, which they seem to have fallen back from, um, to the 404B argument in the brief, and also, obviously, the question of harmfulness, harmlessness.  prepared to put this evidence in this context. What do you think he conceded on? What about a concession about intrinsicness? I believe the, the first thing that my friend said was that this is, was properly admitted at 404, as 404B evidence, which was not their position in the brief, was that it was not. Well, they, I think he still says that, but he says he's got three positions. He's got three positions. It's part and parcel of it. It's intrinsic. If it's not, it's properly admitted as 404B evidence. And if it wasn't properly admitted as 404B evidence, it was harmless. Um, after his colloquy with you, your honor, I would agree that characterizes a position today, but I just want to note that's not the position in the briefs. Neither is there a section on harmfulness, which would obviously have prepared his argument. He didn't raise harmlessness in the brief. Right. And as a result, we're not here. But he had it reviewed on as harmless anyway. I mean, we can't, we can't recognize an error without seeing whether it prejudice somebody. I don't believe, that's right, your honor. I don't know why we can't raise something like that. It doesn't seem practical to me to send something back. It's a subject of a five-day trial. If in our own minds, we are convinced that it's absolutely harmless. I believe the law says that the harmlessness argument may be waived, is my only point, which was addressed earlier. I know there's an argument to that effect, but I don't think you're going to prevail on that around here. I think that we have to find that it's harmful. That is reversible error. It has to be error, and it has to be reversible error, on top of being error. As to Ms. Sterling, your honor, the evidence is far less even than what the government can point to with respect to Mr. Stewart. And the question for the court... I thought it was intrinsic. I'll just be honest with you. Because we have to find that when it's necessary to complete the story of the crime on trial, then the evidence is intrinsic. Which means you don't even get to 404B. But you go ahead. With respect to Ms. Sterling, this court's case law, Rue being a prominent example, shows that a deliberate ignorance instruction is rarely given. These are... This is not to become a substitute for a knowing intent for the mens rea. Otherwise, if this instruction is given, the clear risk is that defendants may be convicted on the basis of watered-down negligence or recklessness standard. Well, did you object to the instruction? Yes, your honor. Okay. Was there any... There wasn't any mention of carelessness or negligence in the instruction? In the instruction that was given? The willful blindness. It was a standard willful blindness. Yeah, but it said deliberate. He kept... He deliberately kept himself ignorant. That was the... All of those lines. The theory that's offered by the government is that Ms. Sterling deserved a deliberate ignorance instruction because she actively sought to avoid knowledge, which is what this court's precedent requires. But what you worry about is that these things sort of slide into negligence, but I don't think that there's any indication of that here. Well, what's missing here is the second half of this court's test for a deliberate ignorance instruction. First, you look to evidence of suspicious activity that would give rise to a suspicion on the part of a defendant. But second, there must be some action taken to avoid learning more. And if a defendant consciously puts her head in the sand and continues her course of criminal conduct, then a deliberate ignorance instruction is appropriate. What you have here is actually the opposite because after a short period of involvement in these activity, Ms. Sterling actually called the ringleader, her relative in Jamaica, to figure out what was going on and then stopped continuing in the activities. So that's precisely the opposite of avoiding knowledge and continuing to act. You have seeking knowledge and stopping action. Well, I know. Sterling received cash and wire transfers and then immediately sent them to Mr. Jump in Jamaica, right? To Ms. Jump. And that certainly goes to actual knowledge. The question here is whether there is any evidence that she avoided knowledge to give rise to a deliberate ignorance. A district judge in giving an instruction could have seen those as warning signs and the kind of thing that would alert somebody that there's something really bad going on, but I want to turn a blind eye to it. I want to turn my head to it. That's right, Your Honor. And what's missing is the turning of the head. We're not disputing that there wasn't cause for suspicion. It's that to get this instruction, you have to actually do something. There's no evidence of that here. All right. I think we'll come down and recounsel and take a brief recess. Senate report will take a brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, James A. Wynn, Jr.